**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charnola Ford, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Kazimierz Barnas; LIV Transportation, Inc.; and Gina Logistics Corp.,<br><br>Defendants. | No. CV17-2688-PHX DGC<br><br>**ORDER** |

Plaintiff Charnola Ford filed a complaint against Defendants Kazimierz Barnas, LIV Transportation, Inc. ("LIV"), and Gina Logistics Corp. ("Gina"), alleging various claims arising out of an automobile accident. Doc. 1-1 at 2-25. Defendants move for partial summary judgment. Doc. 58. The motion is fully briefed, and oral argument will not aid the Court's decision. Docs. 58-62. For the following reasons, the Court will grant the motion in part.

**I.  Background.**

The following facts are undisputed unless otherwise noted.[1] On July 23, 2015, Barnas rear-ended Plaintiff's truck while driving a commercial semi-truck. Doc. 59 at 7-12. LIV admits that Barnas was its agent at the time of the accident. Doc. 9 at 5 ¶ 34; Doc. 1-1 at 13. The parties dispute whether Gina played a role in hiring Barnas and

---

[1] Citations are to page numbers attached to the top of pages by the Court's ECF system, not to original numbers on the document pages.

whether Barnas was also Gina's agent. *Id.*; Doc. 61 at 12 ¶ 6, 58-59; Doc. 59 at 2 ¶ 12. Officers at the scene cited Barnas for failing to avoid the collision (Doc. 59 at 11-13), and Defendants admit that Barnas negligently collided into Plaintiff's vehicle (Doc. 9 at 8 ¶¶ 55-58). The parties dispute the cause of the accident, whether Barnas was adequately rested that day, whether he saw Plaintiff's vehicle before the collision, and whether he tried to maneuver around Plaintiff's truck before hitting it. Doc. 59 at 2 ¶¶ 5-6, 8-10; Doc. 61 at 2 ¶¶ 5-6, 8-10. The parties further dispute LIV's and Gina's direct negligence and whether LIV properly trained and supervised Barnas pursuant to federal regulations. Doc. 58 at 3 ¶¶ 13, 20-25; Doc. 61 at 4 ¶¶ 20-25.

Barnas received help filling out his commercial driver employment application because he does not read English "too well." Doc. 59 at 50, 3 ¶ 15; Doc. 61 at 3 ¶ 14. Barnas's employment application was incomplete when he was hired, omitting several fields including his education level, drug and alcohol history, driver's license information, and driving experience. Doc. 61 at 30-31. The field for "Company Name" on page one is blank (Doc. 61 at 30), but LIV's logo, watermark, and name appear several times throughout the application and on other employment materials Barnas signed (*see, e.g.*, *id.* at 33-35, 37-40). Plaintiff asserts that "Barnas's driver qualification file [is] also missing page [three,] which would have contained past employers' information" necessary for a federally required background check. Doc. 61 at 3 ¶ 16.

In his deposition, Barnas stated that he has had a valid commercial driver's license ("CDL") for sixteen years and has had only one prior accident thirteen to fifteen years ago. Doc. 59 at 56-57. Barnas also stated that LIV gave him a driving test before hiring him. *Id.* at 59. Plaintiff contends that LIV and Gina failed to obtain Barnas's driving history prior to hiring him. Doc. 61 at 3-4 ¶¶ 17, 19, 77. Plaintiff filed suit in state court in June 2017. Doc. 1-1 at 2-25. The case was removed to this Court based on diversity jurisdiction two months later. Doc. 1.

///

///

**II.    Summary Judgment Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2]

**III.    Discussion.**

Defendants move for summary judgment on (1) all claims against Gina; (2) the punitive damages claim against Barnas; and (3) the direct negligence claims and punitive damages claim against LIV.  Doc. 58.

    **A.    Claims Against Gina.**

        **1.    Negligent Hiring, Training, and Supervision and Retention.**

"For an employer to be held liable for . . . negligent hiring, retention, or supervision," one of its employees must commit a tort.  *See Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004); *Petty v. Arizona*, No. CV-15-01338-PHX-DLR, 2016 WL 4095835, at *1 (D. Ariz. Aug. 2, 2016) ("To state a claim for negligent supervision, the plaintiff must allege that an employee committed a tort, that the defendant employer had a reason and opportunity to act, and that the defendant failed to perform its duty to supervise."); *id.* ("To prevail on a negligent training claim, a plaintiff must show a

---

[2] The parties apply Arizona law in their briefing, and the Court will also.

- 3 -

[defendant employer's] training or lack thereof was negligent.") (quoting *Guerra v. State*, 323 P.3d 765, 772 (Ariz. Ct. App. 2014), *vacated on other grounds*, 348 P.3d 423 (Ariz. 2015)).

Gina argues it never hired or employed Barnas. Doc. 58 at 4. Gina admits that it leased the vehicle Barnas drove at the time of the accident, but asserts that LIV hired and employed Barnas. Doc. 58 at 4-5. In response, Plaintiff seems to conflate several theories of liability, arguing "Barnas was still driving Gina's truck under the color of its operating authority[,] therefore Gina has to comply with the [federal regulations] and is directly liable under the [regulations]." Doc. 60 at 6. Plaintiff also states that "Gina's violation of properly qualifying, training[,] and supervising Barnas prior to entrusting him with the truck he was to operate is a violation of the [federal regulations] and is negligence per se." *Id.*

Plaintiff's response brief cites no evidence in the record showing that Gina hired or employed Barnas. *See* Doc. 60 at 6. To the contrary, Barnas's commercial driver employment application and other employment materials repeatedly contain LIV's name, watermark, and logo. Doc. 61 at 33-35, 37-40. Plaintiff's statement of facts cites one of Defendants' disclosures which states that a "representative of Defendant Gina Logistic Corp is expected to testify regarding the company's hiring generally and specifically to Kazimerez Barnas." Doc. 61 at 58-59. But Plaintiff's response brief does not cite this evidence or argue that this disclosure establishes that Gina hired or employed Barnas. *See* Doc. 60 at 6. And the disclosure does not indicate the Gina representative will testify that Gina hired and employed Barnas, only that the representative will testify "regarding the company's hiring generally and specifically to [Barnas]." Such a description could simply mean that the representative will testify that Gina did not hire Barnas.

Plaintiff fails to present any evidence that Gina hired and employed Barnas – an essential element of her negligent hiring, training, supervision, and retention claims. The record shows only that LIV hired and employed Barnas. Plaintiff's conclusory assertions to the contrary are insufficient to create a triable issue. *Anderson*, 477 U.S. at 249-52.

The Court will grant summary judgment on Plaintiff's negligent hiring, negligent training, and negligent supervision and retention claims against Gina. *See Celotex*, 477 U.S. at 322; Doc. 1-1 at 13-17.

### 2. Negligent Entrustment.

In addition to causation and damages, a plaintiff must establish four elements to prevail on a negligent entrustment claim: (1) the defendant owned or controlled the vehicle; (2) the defendant gave the driver permission to operate the vehicle; (3) the driver was incompetent to drive safely because of his physical or mental condition; and (4) the defendant knew or should have known that the driver was incompetent to drive safely. *Verduzco v. Am. Valet*, 377 P.3d 1016, 1019 (Ariz. Ct. App. 2016) (citing *Acuna v. Kroack*, 128 P.3d 221, 227 (Ariz. Ct. App. 2006)); *see also Powell v. Langford*, 58 Ariz. 281, 285, 119 P.2d 230, 234 (1941). Gina argues that Plaintiff can satisfy none of these elements. Doc. 58 at 4.

Under the first element, Gina argues that it did not control the vehicle; it merely leased it to LIV, "which assumed exclusive possession and control." Doc. 58 at 5. But Gina does not contend that it lacked ownership of the vehicle. Doc. 59 at 70; Doc. 58 at 4-5. Thus, the Court cannot grant summary judgment on the basis that Plaintiff fails to satisfy the first element.

Gina seems to cite *Tissicino v. Peterson*, 121 P.3d 1286, 1289 (Ariz. Ct. App. 2005) for the proposition that Plaintiff must prove Gina controlled the vehicle, even when Gina concedes ownership. Doc. 58 at 5. But Gina's quotation is lifted out of context. In full, the Arizona Court of Appeals stated: "A majority of other jurisdictions have defined right to control the chattel as the essential element of a negligent entrustment claim, rather than ownership." *Tissicino*, 121 P.3d at 1289. The court discussed those other jurisdictions in the context of deciding that proof of ownership was not required when control was present – not that a plaintiff must prove control when a defendant admits ownership.

Gina argues that Plaintiff cannot establish the second element because she presents no evidence that Gina gave Barnas permission to operate the vehicle, emphasizing that LIV employed Barnas, not Gina. Doc. 58 at 5. The Court agrees. Plaintiff identifies no evidence in the record showing that Gina, the lessor, gave Barnas, LIV's employee, permission to operate the vehicle. Nor does Plaintiff cite any authority suggesting that Gina implicitly gave permission by leasing the vehicle to LIV.

Regarding the third and fourth elements, Gina argues that Plaintiff presents no evidence that Barnas was incompetent to operate the vehicle, noting that his only accident was over ten years ago. Doc. 58 at 5. Gina further argues that, even if Barnas was incompetent to drive, Gina neither knew nor had reason to know about the incompetence. *Id.* Plaintiff asserts "Gina [was] well aware of the fact [that] Barnas was not qualified to operate a commercial vehicle," but presents no evidence in support of this assertion. *Id.* Plaintiff seems to argue that the Court should attribute to Gina any knowledge LIV had of Barnas' alleged incompetence because the same individual – Krzysztof Bielecki – owns and operates both LIV and Gina. *See* Doc. 60 at 2-3, 5-6. But Plaintiff cites no authority for this contention. Nor does Plaintiff present evidence of Barnas's incompetence, or evidence of either LIV's or Gina's knowledge of such incompetence. The Court will not search the record for evidence Plaintiff fails to identify. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("'[J]udges are not like pigs, hunting for truffles buried in briefs.'") (citation omitted).

Last, Plaintiff asserts that alleged discrepancies in Mr. Bielecki's federal filings and other alleged violations of the Federal Motor Carrier Safety Regulations ("FMCSR's") establish the elements of negligent entrustment. *Id.* at 6. But that tort requires the elements identified above, for which Plaintiff has presented no evidence. Plaintiff "fails to make a showing sufficient to establish the existence of . . . element[s] essential to" her case – that Gina gave permission to operate the vehicle, Barnas was incompetent to drive, and that Gina knew Barnas was incompetent. *Celotex*, 477 U.S. at

322. The Court will grant summary judgment on Plaintiff's negligent entrustment claim against Gina. Doc. 1-1 at 17-19.

### 3. Negligence Per Se.

"Violation of a statutory standard of care is usually held to be negligence per se." *Gunnell v. Ariz. Pub. Serv. Co.*, 46 P.3d 399, 403 (Ariz. 2002); *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1385 (Ariz. Ct. App. 1994) ("A person who violates a statute enacted for the protection and safety of the public is guilty of negligence per se."). Plaintiff's complaint alleges at least eight statutory violations of the FMCSR's as the bases for negligence per se. Doc. 1-1 at 19. In her response brief, Plaintiff cites only three alleged statutory violations by Gina, namely § 376.11(a), § 390.13, and § 391.11. Doc. 60 at 5-6.

Gina argues the FMCRS's do not apply because Plaintiff presents no evidence that Gina "hired, trained, or supervised Barnas, or entrusted him with a vehicle." Doc. 58 at 5. The FMCSR's state: "[t]he rules in subchapter B of this chapter are applicable to all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce." 49 C.F.R. § 390.3(a)(1). Subchapter B includes all three sections Plaintiff cites in her response brief. *See* 49 C.F.R. §§ 376.11 (Part 376 – Lease and Interchange of Vehicles), 390.13 (Part 390 – Federal Motor Carrier Safety Regulations; General), 391.11 (Part 391 – Qualifications of Drivers and Longer Combination Vehicle (LCV) Driver Instructors). Thus, the FMCSR's apply to Gina only if it is an "employer[] . . . that transport[s] property or passengers in interstate commerce." 49 C.F.R. § 390.3(a)(1).

As discussed above, Plaintiff presents no evidence that Gina hired or employed Barnas. As a result, Plaintiff fails to show that Gina is an employer for purposes of § 390.3. The FMCSR's accordingly do not apply to Gina and provide no basis for Plaintiff's negligence per se claim. Plaintiff alleges in her complaint that Defendants also violated state statutes and regulations, but she does not identify any state laws in her complaint or response brief. Doc. 1-1 at 11; Doc. 60 at 5-6. The Court will grant summary judgment on Plaintiff's negligence per se claim.

### 4. Respondeat Superior and Punitive Damages.

The doctrine of respondeat superior generally holds an employer vicariously liable for negligent work-related actions of its employees. "[A]n employer is vicariously liable for such acts only if the employee is acting 'within the scope of employment' when the accident occurs. To determine the course and scope of employment, Arizona courts have long considered the extent to which the employee was subject to the employer's control." *Engler v. Gulf Interstate Eng'g, Inc.*, 280 P.3d 599, 601 (Ariz. 20212) (citations omitted); *see also* Restatement (Second) §§ 219(2), 220(2), 228(1), 229(2) (factors to consider in evaluating extent of control). That is because "[v]icarious liability results solely from the principal-agent relationship." *Kopp v. Physician Group of Ariz., Inc.*, 421 P.3d 149, 151 (Ariz. 2018).

Gina argues that Barnas was never subject to its control. Doc. 58 at 5. Plaintiff's response brief does not address this argument. *See* Doc. 60 at 5-6. Reading other portions of Plaintiff's brief liberally, Plaintiff appears to argue that the Court should attribute to Gina all alleged activity or knowledge by LIV because of the entities' common owner. *Id.* at 2-6. But Plaintiff cites no authority for this argument. And again, Plaintiff presents no evidence that Gina hired, employed, or exercised any control over Barnas. The uncontradicted evidence shows that only LIV hired and employed Barnas. No basis exists, therefore, for finding Gina vicariously liable for Barnas's negligence. The Court will grant summary judgment on Plaintiff's respondeat superior claim against Gina.

Because the Court will grant summary judgment on all of Plaintiff's underlying claims against Gina, the Court will also grant summary judgment on Plaintiff's claim for punitive damages against Gina.

### B. Punitive Damages Claim Against Barnas.

"Punitive damages are appropriately awarded in tort cases to punish the wrongdoer and deter others from emulating the misconduct." *Hudgins v. Sw. Airlines, Co.*, 212 P.3d 810, 824 (Ariz. Ct. App. 2009) (citing *Linthicum v. Nationwide Life Ins.*

*Co.*, 723 P.2d 675, 679 (Ariz. 1986)). "[A] jury may award punitive damages only if clear and convincing evidence exists that the tortfeasor possessed an 'evil mind' while engaging in aggravated and outrageous conduct." *Hudgins*, 212 P.3d at 824 (citing *Linthicum*, 723 P.2d at 679); *Quintero v. Rogers*, 212 P.3d 874, 879 (Ariz. Ct. App. 2009) (Tortfeasor's "actions must surpass 'gross negligence or mere reckless disregard of the circumstances.'") (citation omitted). The Court must consider the clear and convincing burden of proof when ruling on defendant's motion for summary judgment. *See Anderson*, 477 U.S. at 254.

Barnas argues that Plaintiff's punitive damages claim fails because no evidence "shows that he possessed improper motives, or that his conduct was oppressive, outrageous, or intolerable." Doc. 58 at 8. Barnas argues that he was "well within the hours-of-service requirements" for pre-trip rest before the accident, even though the crash report listed "fell asleep/fatigued" as a contributing factor. *Id.* Barnas also asserts that the reporting officer's crash report, concluding that Barnas fell asleep or was fatigued, is unsupported by any foundation or first-hand observations. *Id.* at 8-9; Doc. 59 at 2. In any event, Barnas asserts the portion of the crash report listing that information is inadmissible. Doc. 58 at 8-9. Finally, Barnas argues that, even if the report is admissible, "simple fatigue is not enough to impose punitive damages in the absence of evidence that the driver consciously appreciated the risk of fatigue and the potential for a fatal accident." *Id.* at 9.

Without citing to the record, Plaintiff counters that Barnas had "knowingly violated the FMCSR's designed to stop tractor-trailer drivers from driving while fatigued or distracted by falsifying his driving logs," and that Barnas knew violating such rules could result in injury and death to others. Doc. 60 at 11. Plaintiff also argues that Barnas crashed squarely into the back of Plaintiff's vehicle without swerving, which supports a finding that Barnas was fatigued or distracted. *Id.* From this evidence, Plaintiff contends that a jury could find that Barnas had a sufficiently evil mind to warrant punitive damages. Plaintiff further argues that LIV destroyed evidence – Barnas' hours of service

logs – which would support that Barnas was fatigued. *Id.*; Doc. 59 at 4 ¶¶ 27-29; Doc. 61 at 5.

As an initial matter, the Court may consider the crash report by the officer at the scene, even if, as Barnas argues, it is inadmissible in its present form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents"). If Plaintiff could offer the evidence in an admissible form at trial, the Court may rely on the evidence to deny summary judgment. *Id.* at 1037; *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("We note, however, that at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony."). Plaintiff could offer the evidence in an admissible form at trial. The reporting officer could testify about his observations that evening and lay foundation for his conclusions about the cause of the crash.

The parties dispute whether Barnas was appropriately rested before the accident (Doc. 59 at 2 ¶ 6; Doc. 61 at 2), and whether Barnas saw Plaintiff's vehicle and attempted to maneuver around it before the crash (Doc. 59 at 2 ¶¶ 7-10; Doc. 61 at 2, 12-13, 15-19). The parties also dispute how to characterize the extent of the damage to Plaintiff's vehicle (Doc. 59 at 2; Doc. 61 at 2), the significance of the skid marks on the road (*id.*), and the ultimate cause of the accident (*id.*). At the scene, Barnas told the reporting officer that he did not see the other vehicle until he hit it. But in his deposition, Barnas did not recall that statement, explaining he "was in a state of shock after the accident." Doc. 59 at 53.

Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that a jury could find that Barnas was fatigued and yet chose to drive a large truck pulling a semi-trailer. This finding could be based on evidence that Barnas failed to swerve before the accident, the officer's observation that Barnas was not sufficiently rested, and the

- 10 -

absence of the logbooks which would show his level of rest.[3] A jury might also find Barnas's deposition testimony less credible than his statement at the scene. A reasonable jury could conclude that Barnas, an experienced commercial driver, was "consciously aware" that his actions "created[d] a substantial risk of tremendous harm to others." *Hudgins*, 212 P.3d at 825 (quoting *Linthicum*, 723 P.2d at 680-81); *Quintero v. Rogers*, 212 P.3d 874, 879 (Ariz. Ct. App. 2009) ("A tortfeasor manifests an 'evil mind' if he . . . 'consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.'") (citation omitted); *id.* at 878-80 (finding evidence could support claim for punitive damages where defendant caused accident after excessive speeding, reckless driving, and weaving in and out of traffic prior to crash).

The cases Barnas cites from other circuits do not compel a different result. *Purnick v. C.R. England, Inc.*, 269 F.3d 851, 852 (7th Cir. 2001) (applying Indiana law); *Burk v. Maasen*, 904 F.2d 178 (3d Cir. 1990) (applying Pennsylvania law). The Court will deny Barnas's summary judgment motion on Plaintiff's punitive damages claim.

### C. Claims Against LIV.

LIV seeks summary judgment on Plaintiff's direct negligence claims – negligent hiring, training, supervision and retention, negligent entrustment, and negligence per se – because LIV has conceded vicarious liability for Barnas's negligence, which "encompasses the full range of any damages that may be awarded to Plaintiff." Doc. 58 at 10-11; Doc. 1-1 at 5-11.

#### 1. Direct Negligence Claims.

The Court finds Arizona law unclear on whether a plaintiff may bring direct negligence claims along with a respondeat superior claim when the defendant admits vicarious liability for its employee's negligence. The Arizona Supreme Court's only

---

[3] The Court reaches this conclusion without deciding whether an adverse inference instruction or other sanction should be imposed for the missing logbooks. Plaintiff does not ask the Court to resolve the spoliation issue. Doc. 60 at 5, 11. Even without an instruction or sanction, however, the jury could consider the fact that the logbooks are missing. For purposes of future arguments, the Court notes that if the missing logbooks are electronic, Rule 37(e) may govern. If the logbooks are paper, the common law governs. *See* 2015 Advisory Committee Note to Fed. R. Civ. P. 37(e).

apparent case on point is *Lewis v. Southern Pacific Co.*, 425 P.2d 840 (Ariz. 1967). In *Lewis*, the plaintiff sued the railroad that employed three operators aboard the train which struck and killed her husband. *Lewis*, 425 P.2d at 841. The railroad admitted the operators were employees acting within the scope of their employment. *Id.* To show the railroad's negligent entrustment, Plaintiff offered evidence that the operators previously had violated speed limits and had been involved in collisions. *Id.* The trial court refused to admit the evidence, and the Supreme Court affirmed. *Id.* The court found that "[i]f the defendant employees were actually negligent at the time of the accident and proximately caused the accident, [that was] sufficient to establish the railroad's liability. But the failure of an employer to hire only competent and experienced employees [did] not of itself constitute an independent ground of actionable negligence." *Id.*

In *Quinonez v. Anderson*, 696 P.2d 1342, 1344 (Ariz. Ct. App. 1984), defendant Anderson negligently ran a red light and killed the plaintiff's wife. *Id.* Anderson's employer conceded that he was negligent and acting within the scope of his employment at the time of the accident. *Id.* Based on that admission, the employer successfully moved to dismiss the plaintiff's negligent entrustment claim. *Id.* at 1343. On appeal, the employer argued that "Arizona does not recognize a tort of negligent entrustment separate and apart from the theory of respondeat liability." *Id.* at 1346. The court of appeals disagreed. The court acknowledged *Lewis*, but found that Arizona had diverged from *Lewis* and adopted the Restatement (Second) of Torts, which recognizes that derivative and direct liability claims may exist together. *Id.* (citing *Pruitt v. Pavelin*, 685 P.2d 1347, 1353 (Ariz. Ct. App. 1984)). The court noted that Quinonez might not care whether he recovered from Anderson's employer through direct or derivative liability. *Id.* But whether Quinonez could maintain both claims would affect the admissibility of evidence on Anderson's previous driving record. *Id.* And that evidence – Anderson's record and the employer's knowledge of and investigation into previous issues – could affect Quinnonez's damages for the employer's direct liability. *See id.* Thus, the court "reject[ed the employer's] contention that [plaintiff] received all [he was] entitled to by

- 12 -

having the case submitted to the jury on the theory of respondeat superior" alone. *Id.* The court held that plaintiff could bring a negligent entrustment claim in addition to his respondeat superior theory because "Mrs. Quinonez, if she had survived, could have maintained an action against [the employer], directly under a § 307 Restatement (Second) of Torts theory, and under a theory of respondeat superior." *Id.*

Section 307 of the Restatement (Second) of Torts (1965) states: "[i]t is negligence to use an instrumentality . . . which the actor knows or should know to be so incompetent, inappropriate or defective, that its use involves an unreasonable risk of harm to others." Comment (d) to the companion section in Restatement (Second) of Agency, § 213 (1952) notes that "[l]iability results under the rule . . . not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." *See Quinonez*, 696 P.2d at 1346. "In the absence of controlling statutory or case authority, Arizona courts generally follow the Restatement of the Law on a particular subject, provided its application 'is logical, furthers the interests of justice, is consistent with Arizona law and policy, and has been generally acknowledged elsewhere.'" *Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 258 P.3d 200, 205 (Ariz. Ct. App. 2011).

For three reasons, the Court finds *Quinonez* governs the present case, not *Lewis*.

First, the defendant railroad in *Lewis* had not conceded its employees' negligence. The Supreme Court was focused on evidence relevant to the railroad's direct liability and "thought it sufficient that the employer could be responsible under the doctrine of respondeat superior." *Pruitt*, 685 P.3d at 1353-54. The court did not consider a case, as here, in which the defendant concedes vicarious liability, but direct liability evidence would affect plaintiff's damages.

Second, several Arizona Court of Appeals decisions have interpreted *Lewis* narrowly or found that Arizona law permits a plaintiff to bring both direct and derivative liability claims in similar cases, and the Arizona Supreme Court has not reversed. *See Quinonez*, 696 P.2d at 1346-47; *cf. Pruitt*, 685 P.2d at 1353-54 (distinguishing and

- 13 -

reading *Lewis* narrowly); *Rashedi v. Gen. Bd. of Church of Nazarene*, 54 P.3d 349, 351 (Ariz. Ct. App. 2002) (not deciding question but permitting plaintiff's claims for negligent hiring, negligent supervision, negligent retention, and negligence under respondeat superior to go forward); *see also Russell v. Flores*, No. CV-14-02474-TUC-RM (EJM), 2017 WL 564969, at *6 (D. Ariz. Jan. 10, 2017) ("While *Lewis* has not been explicitly overruled, as Plaintiff correctly notes, 'no published decision has cited to *Lewis* since *Quinonez*.'").

Third, in the absence of clear authority, Arizona courts follow the Restatement, so long as its application is logical, furthers the interest of justice, is consistent with Arizona law and policy, and has been generally acknowledged. *Cont'l Lighting & Contracting*, 258 P.3d at 205. Following the Restatement, as interpreted in *Quinonez*, prevents the exclusion of evidence which might affect a plaintiff's damages and accords with the recent trend in Arizona law. Other jurisdictions have reached the same conclusion. *See, e.g.*, *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1222 (Kan. 1998) ("other jurisdictions, including Kansas, have found that an admission that the employee was acting within the scope of his or her employment does not preclude an action for both respondeat superior and negligent entrustment or negligent hiring, retention, or supervision"); *Lim. v. Interstate Sys. Steel Div., Inc.*, 435 N.W. 2d 830, 833 (Minn. Ct. App. 1989) ("we interpret Minnesota law to permit a plaintiff to proceed under both theories"); *Finkle v. Regency CSP Ventures Ltd. P'ship*, 27 F. Supp. 3d 996, 1000 (D. S.D. 2014) ("it is probable that the South Dakota Supreme Court would hold that an admission that the employee was acting within the scope of his or her employment does not preclude an action for both respondeat superior and negligent training or supervision.).

The Court recognizes that *Quinonez* adopted a minority approach. *See Finkle*, 27 F. Supp. 3d at 1000 (discussing jurisdictions applying minority and majority approaches). But the Court sitting in diversity must apply Arizona's substantive law, not the majority rule. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). For this reason,

LIV's citations to cases applying the majority rule are unavailing. *See* Doc. 58 at 11. The Court also disagrees with LIV's narrow reading of *Quinonez* that a plaintiff may only bring direct and derivative liability claims when he has a viable punitive damages claim. The court did not confine its holding as LIV argues. *See Quinonez*, 696 P.2d at 1346.

Applying *Quinonez* to the present case, the Court cannot grant LIV's summary judgment motion on Plaintiff's direct negligence claims. Arizona law permits Plaintiff to bring both direct and derivative liability claims, even though LIV concedes Barnas's negligence and its own vicarious liability. The Court will deny LIV's summary judgment motion on Plaintiff's claims for negligent hiring, negligent training, negligent supervision and retention, negligent entrustment, and negligence per se.

### 2. Punitive Damages Claim.

As noted, a jury may award punitive damages only if clear and convincing evidence shows that the tortfeasor possessed an evil mind while engaging in aggravated and outrageous conduct. *See Hudgins*, 212 P.3d at 824. LIV argues that no evidence shows it had improper motives or demonstrated outrageous conduct. Doc. 58 at 8.

The record shows that several fields on Barnas's employment application with LIV were left blank, including his education level, drug and alcohol history, driver's license information, and driving experience. Plaintiff also argues that a particular page is missing, which would have included Barnas's past employers' information and been necessary for a federally required background check. Moreover, Barnas's logbooks are unavailable to show his service hours. Drawing all inferences in Plaintiff's favor, a jury might reasonably conclude that LIV neglected to secure all information it needed to make an informed decision about hiring Barnas. A jury might also consider the unavailability of Barnas's logbooks, as noted above. A reasonable jury could find that LIV was "consciously aware" that its conduct "created[d] a substantial risk of tremendous harm to others." *Hudgins*, 212 P.3d at 825 (quoting *Linthicum*, 723 P.2d at 680-81). The Court will not grant summary judgment on Plaintiff's punitive damages claim against LIV.

/ / /

**IT IS ORDERED:**

1. Defendants' motion for partial summary judgment (Doc. 58) is **granted in part and denied in part**. Summary judgment is granted on all claims against Gina Logistics Corp. Summary judgment is denied on Plaintiff's punitive damages claim against Kazimierz Barnas and Plaintiff's direct negligence and punitive damages claims against LIV Transportation, Inc.

2. The Court will set a hearing on **November 7, 2018 at 3:00 p.m.** to select a trial date in this case. Counsel who will be responsible for trying the case shall be present at the hearing and shall have knowledge of any experts' schedules.

Dated this 26th day of October, 2018.

*David G. Campbell*
David G. Campbell
Senior United States District Judge